UNITED STATES of America

v.

**William F. D'ANNOLFO, Mark Phillips Realty Trust and D'Annolfo Corp.**

Civ. A. No. 79–1247–Mc.

United States District Court,
D. Massachusetts.

July 5, 1979.

Charles K. Mone, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Roger S. Davis, Boston, Mass., Richard M. Canzano, Woburn, Mass., for defendants.

## MEMORANDUM AND ORDER ON PRELIMINARY INJUNCTION

McNAUGHT, District Judge.

This action was brought by the United States pursuant to 33 U.S.C. §§ 1311, 1319, and 1344. The plaintiff, through its Corps of Engineers, seeks an order restraining the defendants from further filling activities in and around the Aberjona River, its tributaries, lakes and ponds, and wetlands adjacent to those water bodies in the area of the Industri-Plex Park in Woburn, Massachusetts, until such time as defendants have filed an application for a permit with the Corps of Engineers, and until that application has either been acted upon and a permit issued or a determination has been made that no individual permit is necessary. Jurisdiction and venue are found in 28 U.S.C. § 1345 and § 1391(a).

The Mark Phillips Realty Trust (hereinafter called Trust) is the developer of the

Industri-Plex Park in Woburn. Defendant William F. D'Annolfo (D'Annolfo) is trustee, and apparently is in control of the development of the area known as the Park. When the motion for a restraining order first came on for hearing on June 29, 1979, Mr. D'Annolfo appeared personally before the court. He asked for a continuance of the hearing, representing that his attorney was then out of town on vacation. The request was granted, the parties stipulating that matters would remain in status quo until the Third of July, 1979 at 2:00 p. m. On that date, and at that time, attorneys for both sides were heard. It was agreed in open court that the matter could be decided by this court on the basis of papers filed in support of, and in opposition to, the plaintiff's motion, and on "statements of expected evidence" made by counsel. After hearing and deliberation, the court determines that the motion for a preliminary injunction should be granted.

The jurisdiction of the court to hear the matter is not in question. The power of the plaintiff to act in these premises under Section 1344 of Title 33 is questioned by the defendants. They contend that the Corps of Engineers can require permits for dredging or placing fill material or discharging into "navigable waters" at specified disposal sites, but that § 1344 does not empower the government to issue a cease and desist order on the facts of this case. Defendants insist that, under Section 1344, the United States and its Corps of Engineers are limited to dealing with "navigable waters" and that the area in the vicinity of the Aberjona River does not fall within the definition of "navigable waters."

If the Aberjona River area falls within the "permit jurisdiction" of the Corps of Engineers, and the court is satisfied that it does, the Corps has the right to require the defendants to halt their filling activities in the area until a proper application for a permit has been made and the permit is either issued or a determination is made by the Corps that the activities are not adversely affecting the aquatic environment (and therefore no permit is necessary).

When Congress passed the federal Water Pollution Control Act (with the amendments of 1972, 33 U.S.C. § 1251 et seq.) it placed upon the Corps of Engineers responsibilities and supervision over the discharge of dredge or fill material into *waters of the United States*. The statute itself uses the term "navigable waters." "Navigable waters" is defined at 33 U.S.C. § 1362(7) to mean "waters of the United States." It has been held in *Natural Resources Defense Counsel, Inc. v. Callaway*, 392 F.Supp. 685 (D.C.D.C., 1975), that Congress thereby asserted federal jurisdiction over the nation's waters to the maximum extent permissible under the Commerce Clause of the Constitution. District Judge Robinson held that, accordingly, as used in the Water Act, the term is not limited to the traditional tests of navigability.

The term "waters of the United States" is now defined in Corps of Engineers Regulations, at 33 C.F.R. 323.2(a), to include not only coastal and inland waters, lakes, rivers and navigable streams, but other waters such as isolated wetlands and lakes, intermittent streams, and waters not part of a tributary system to interstate or navigable waters of the United States, the degradation of which could affect interstate commerce.

This court is of the opinion that the Aberjona River area falls within that broad definition, and that the definition itself satisfies the Congressional mandate.

The Aberjona River and wetlands in its area serve as a storm and flood water storage area. It assists in the regulation of ground water—service water interchange, and is a source of supply for the Mystic Lakes. These lakes are used for swimming, boating and fishing. (See Exhibit 3 to the Complaint.) One does not have to stretch his imagination too far to determine the probability of dredging and filling activities affecting interstate commerce. The area is an attraction to more than local residents.

33 C.F.R. 323.4–4 vests discretionary authority in the Corps of Engineers to require a permit whenever the Corps determines that the concerns of the aquatic environment (40 C.F.R. Part 230) indicate the need for such action because of impact to the affected waters.

It is the conclusion of the court that there is more than a reasonable prospect that the plaintiff would establish, at an evidentiary hearing on request for a permanent form of relief (in the event that such hearing should take place), that there was ample basis for a determination on the part of the Corps that "concerns of the aquatic environment" indicate the need for requiring a permit.

The action of the Corps of Engineers does not appear to have been arbitrary or unjustified. It appears to have been a solid basis giving rise to the right of the plaintiff to instruct the defendant to stop filling activities and to apply for a permit based upon information which was available.

The verified complaint discloses that one Richard Roche, of the Corps, received a call from one Russell Wilder of the United States Environmental Protection Agency, on June 4, 1979. Mr. Wilder advised Mr. Roche (and this is further verified by an affidavit of Mr. Wilder) that he personally had seen bulldozers pushing fill into the Aberjona River and its wetlands at the Industri-Plex Park. On June 5 (See paragraph 7 of the Verified Complaint and Affidavit of Martha Gaythewaite.), a paralegal specialist of the Corps visited the site with permission, and she, too, saw fill being pushed into the river and the wetlands adjacent.

On June 12, a representative of the Corps of Engineers wrote to Mr. D'Annolfo, stating the concern of the Corps that his work might be affecting the aquatic environment. On June 15, the Environmental Protection Agency (See 33 C.F.R. 323.4–4.) asked the Corps to exercise its authority to require a permit for the work being performed.

The Corps thereafter exercised its authority, and ordered Mr. D'Annolfo to cease and desist the activity unless authorized by a Corps of Engineers permit. (See Exhibit 4 to the Complaint.) Notwithstanding the order to desist, the activity was continued by the defendants. The Corps is in possession of information which supports its concern that discarded hides and animal carcasses were present at the development site and may have been used as fill in the wetlands area; that there are chemical waste lagoons containing a critical level of chromium at the site; that the filling activities might affect the capacity of the area for storage for storm and floodwaters; that municipal water wells are in some danger of depletion if ground water is depleted; and that biochemical oxygen demand levels have increased in the area. The plaintiff, by its Corps of Engineers, has reason to fear that, if the activity continues, there may be less ecological life in the area.

■ The standard of requiring a demonstration of immediate irreparable harm, employed in civil litigation as a condition precedent to the granting of injunctive relief, is not a prerequisite to the allowance of an injunction to the plaintiff in this case. "When the government acts to enforce a statute or make effective a declared policy of Congress, the standard of public interest and not the requirements of private litigation measure the propriety and need for injunctive relief." *United States v. Shafer*, 132 F.Supp. 659 (D.Md.1955), *aff'd* 229 F.2d 124 (4th Cir. 1956), *cert. denied*, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460 (1956).

The court is not required to "balance the equities" in this particular instance. It is aware that a delay, if not justified, may have serious effects on the defendants moneywise. It has been represented, by counsel for the defendants, that a delay may result in a breach of contract between defendants and other private individuals, which may expose defendants to the possibility of paying damages. If this be so, it is regrettable, but the court has no power to require security.

The court believes, as a result of inquiries and responses thereto by counsel, that the defendant will cooperate with the United States, and allow members of the Corps of Engineers to make inspections, observations, and testings on the site and in the area, and that with this anticipated cooperation, the Corps will have completed its preliminary work and made its determination within a period of thirty (30) days as to whether a permit is required.

■ It is, therefore, ordered that the defendants, their agents, employees, and other

persons over whom they exercise control, shall cease placing any dredged or fill material into the Aberjona River, its tributaries, lakes and ponds, and the wetlands adjacent to those waters, unless and until expressly authorized to do so by a Corps of Engineers permit. The court orders the defendants to permit such agents and employees of the United States Government as are deemed necessary by the Division Engineer, the Corps of Engineers, to have access to any site for the purpose of inspection and observation and testing, and any other activities deemed necessary to assist the Corps of Engineers in determining whether an individual permit should be issued, and whether there have been violations of Section 404 of the Clean Water Act, 33 U.S.C. § 1344. It is ordered further that the defendants provide forthwith to individuals designated by the Division Engineer of the Corps of Engineers, access to engineering and testing data, and any other data in possession of the defendants which relate to the effects of the dredging and filling activities of the defendants in the Industri-Plex Park area.