**PARKVIEW CORPORATION, Plaintiff,**

v.

**The DEPARTMENT OF the ARMY, CORPS OF ENGINEERS, CHICAGO DISTRICT, Lawrence F. Coffill, Acting District Engineer, Chicago District,**

and

**The City of Neenah, a Municipal Corporation,**

and

**The United States of America, Intervening Defendant,**

and

**Environmental Protection Agency, Intervening Defendant, Defendants.**

No. 78–C–530.

United States District Court, E. D. Wisconsin.

May 28, 1980.

**1280**

Howard T. Healy, DiRenzo & Bomier, Neenah, Wis., for plaintiff.

Joan F. Kessler, U. S. Atty. by Charles H. Bohl, Milwaukee, Wis., for U. S. Dept. of Army & U. S.

Elizabeth Stein, Pollution Control Section, Dept. of Justice, Washington, D. C., for Environmental Protection.

James B. Gunz, City Atty., Neenah, Wis., for City of Neenah.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This action is before me on the motion of the defendants, Department of the Army Corps of Engineers (COE), the acting Chicago district engineer for the Corps, the United States and the Environmental Protection Agency (all hereinafter referred to as "the federal defendants"), for dismissal or summary judgment as to the plaintiff's amended complaint and on the United States' motion for summary judgment as to its cross-complaint against the city of Neenah. The city has indicated by a letter to the court from the city attorney, dated April 29, 1980, that it does not oppose any of the federal defendants' motions. For the reasons which follow, the federal defendants' motions for summary judgment will be granted both as to the plaintiff's complaint and as to the United States' cross-complaint.

## I. BACKGROUND

Since 1968, the plaintiff corporation has owned land in the Lake Edge Park Plat adjacent to Lake Winnebago located in the city of Neenah, Wisconsin. The city has installed sewer and water lines and other improvements to lots in the Lake Edge Park Plat, and the plaintiff has developed and sold homes in the area since 1968.

In April, 1977, the plaintiff requested that the city install sewer, storm and water mains and other improvements to the remaining lots in the plat. The city's contractor began making the requested improvements in the summer of 1977. In September, 1977, the Wisconsin Department of Natural Resources and the COE ordered the city to stop making the improvements because some of the construction involved the placing of fill in a "wetland area" in violation of state and federal law.

Thereafter, the city removed some of the fill and other materials complained of, and the Wisconsin Department of Natural Resources upon a subsequent inspection found that there no longer was any fill located below the "ordinary high water mark" of

Lake Winnebago in violation of the Wisconsin statutes and department regulations.

However, the COE in October, 1977, and March, 1978, determined that the fill and other improvements constructed by the city in the platted roadways of Glenayre and Skyview Drives were placed in a wetland area in violation of federal law. The roadways in question were made to provide access to the several lots owned by the plaintiff, and the sewer and water lines and other improvements provided utility services to the lots.

In March, 1978, the COE ordered the city to remove the improvements. In July, 1978, the city common council voted to comply with the COE's order, and the city advertised for and received bids from contractors for removal of the fill and improvements. Thereafter, the plaintiff commenced this action to forestall the planned removal operations.

On September 13, 1978, I granted the plaintiff's motion for a preliminary injunction enjoining the defendants from removing fill materials on Glenayre and Skyview Drives. 455 F.Supp. 1350. My decision was based on two points. First, on the record before me at that time, I was uncertain as to whether the COE had the authority to act as it had. Second, I stated that "the plaintiff has raised a substantial question as to whether the two roadways in question are located within a wetlands area as defined by the COE's own regulations." 455 F.Supp. at 1352.

On April 18, 1979, the second of these issues was resolved adversely to the plaintiff, when I granted the federal defendants' motion for partial summary judgment. 469 F.Supp. 217. I found correct the COE's determination that the discharge of fill material into a wetland by the city violated the 1972 amendments to the Federal Water Pollution Control Act. 33 U.S.C. § 1251 et seq.

Following my decision, the plaintiff filed an amended complaint which alleged three related causes of action. In its first cause of action, the plaintiff claims that the defendants' actions have deprived the plaintiff of valuable property rights without due process of law. The second cause of action alleges that the COE exceeded its authority in ordering the city to remove the fill. Finally, the plaintiff alleges that in ordering the fill removed the COE acted arbitrarily and capriciously, purportedly ignoring the public benefits which resulted from the fill operation. In its amended complaint, the plaintiff seeks permanent injunctive relief and $250,000 in monetary damages.

## II. JURISDICTIONAL MOTIONS

Before reaching the merits of the plaintiff's allegations, I must first consider two motions of the federal defendants which question the court's jurisdiction in this case.

First, the federal defendants contend that this action should be dismissed because jurisdiction rests exclusively in the court of claims. 28 U.S.C. § 1331(a), the general federal-question statute, provides this court with jurisdiction to review the decisions and actions of federal agencies. *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607–08 n.6, 98 S.Ct. 2002, 2005, 56 L.Ed.2d 570 (1978). However, § 1331(a) does not waive the federal defendants' right to sovereign immunity with regard to claims for monetary damages. *Treho v. United States*, 464 F.Supp. 113 (D.Nev. 1978). Moreover, under 28 U.S.C. §§ 1346 and 1491, monetary claims against the United States in excess of $10,000 are exclusively within the jurisdiction of the United States court of claims. *Polos v. United States*, 556 F.2d 903 (8th Cir. 1977); *Crawford v. Cushman*, 531 F.2d 1114, 1126 n.17 (2d Cir. 1976). Accordingly, the plaintiff's claim for monetary relief against the federal defendants must be dismissed. However, I see no reason to dismiss any of the plaintiff's substantive allegations nor its claim for injunctive relief on this ground since § 1331(a) provides this court with jurisdiction over such claims.

Second, the federal defendants argue that the instant case should be dismissed because the plaintiff failed to exhaust its administrative remedies. Specifically, the federal defendants contend that the plaintiff should have sought a permit for the discharge of fill material as provided by 33 U.S.C. § 1344.

In support of this contention, the federal defendants cite the case of *United States v. Byrd*, 609 F.2d 1204 (7th Cir. 1979). In *Byrd*, the district court enjoined the defendant from placing any fill on wetlands on his property without obtaining a permit from the COE. In the court of appeals, the defendant argued that the requirement that he obtain a permit was tantamount to a taking of his property without compensation and, therefore, an illegal expropriation in violation of the Fifth Amendment. The court of appeals rejected the defendant's argument, holding that he "must exhaust his administrative remedies before he can raise this particular objection." 609 F.2d at 1211. The theory underlying the court's holding was that if the defendant applied for a permit and received one, no taking would have occurred; if the COE denied a permit application, a record which could be judicially reviewed would have been developed.

The instant case is distinguishable from *Byrd* in two pertinent respects. First, the plaintiff here does not claim that there has been a taking without compensation, but rather claims that the COE made a decision which it was not authorized to make and which was made arbitrarily and without due process. Second, at the time this suit was filed, resort to the COE for a permit would have been futile. In a letter to the director of community development for the city of Neenah, dated June 2, 1978, the COE's Chicago district engineer stated:

> "Since your proposal is environmentally unacceptable it is most probable that an after-the-fact permit would not be granted for the work."

The law does not require parties to exhaust administrative remedies prior to judicial review if resort to such remedies would be futile. *See e. g., Levers v. Anderson*, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945). In light of the statement from the COE, I find that the plaintiff need not have further pursued the administrative process prior to seeking judicial review in this case.

## III. MOTIONS FOR SUMMARY JUDGMENT

My disposition of the federal defendants' motions for summary judgment can best be understood with the statutory and regulatory framework governing this case in mind.

The Federal Water Pollution Control Act (FWPCA) makes the discharge into the waters of the United States of any "pollutant", including dredged spoil, rock, sand and cellar dirt, by any person, unlawful, unless permits or other approvals have been obtained. 33 U.S.C. §§ 1311(a), 1362(6) and (7). Under § 404 of the FWPCA amendments of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. § 1344, the Secretary of the Army, acting through the Chief of Engineers, is authorized to issue permits for the discharge of dredge and fill materials into navigable waters and wetlands under certain conditions and after certain procedures have been followed.

Section 404(b) of the FWPCA, 33 U.S.C. § 1344(b), calls for the promulgation by the Environmental Protection Agency, in consultation with the COE, of guidelines specifying the factors to be considered by the COE in evaluating permit applications. The COE regulations governing activities in navigable waters are found at 33 C.F.R. §§ 320–29. In considering an application to authorize the proposed discharge of dredged or fill material into a wetland, the COE conducts a public interest review which considers numerous factors, including conservation, economics, aesthetics, general environmental concerns, fish and wildlife values, recreation and other factors. 33 C.F.R. § 320.4(a).

Particularly pertinent to the instant case is 33 C.F.R. § 326 which describes the procedures the COE is to follow "in connection with activities requiring Department of the Army permits that are performed without prior authorization." 33 C.F.R. 326.1. Sections 326.2 and 326.3 contain the essential prescription for the COE's action in this situation:

> "§ 326.2 Discovery of unauthorized activity in progress.

When the District Engineer becomes aware of any authorized activity which is still in progress, he shall immediately issue a cease and desist order to all persons responsible for and/or involved in the performance of the activity. If appropriate, the District Engineer may also order interim protective measures to be taken in order to protect the public interest.

"§ 326.3 Investigation.

The District Engineer shall commence an immediate investigation of all unauthorized activities brought to his attention to ascertain the facts surrounding the activity. In making this investigation, the District Engineer shall solicit the view of the Regional Administrator of the Environmental Protection Agency, the Regional Director of the U.S. Fish and Wildlife Service, and the Regional Director of the National Marine Fisheries Service, and other appropriate Federal, State, and local agencies. He shall also request the persons involved in the unauthorized activity to provide the appropriate information on the activity to assist him in his evaluation and in recommending the course of action to be taken. The District Engineer shall evaluate the information and views developed during this investigation in conjunction with the appropriate factors and criteria that pertain to the particular unauthorized activity as cited in 33 CFR Parts 320, 321, 322, 323, and 324, and the guidance contained in § 326.4, below. Following this evaluation, the District Engineer shall formulate recommendations as to the appropriate administrative and/or legal action to be taken."

The COE is authorized to refer cases directly to local United States attorneys for appropriate criminal or civil actions. 33 C.F.R. § 326.4(c).

It is undisputed that in the instant case, the COE followed the procedure mandated by 33 C.F.R. § 326 upon discovery of the unauthorized filling operation by the city of Neenah. In a letter dated September 29, 1977, the Chicago district engineer of the COE informed the Neenah director of public works that the placement of fill materials into a wetland area adjacent to Lake Winnebago was subject to the provisions of the FWPCA. As required by 33 C.F.R. § 326.2, the district engineer asked the city of Neenah to terminate its filling operation pending an investigation by the COE. The letter went on to invite a statement from the city regarding its filling operation. A telegram containing the same information was sent on September 29, 1977, by the district engineer to the president of the plaintiff company and to the contractor performing the filling operation. Both of these parties were also invited to submit statements regarding the filling operation.

On September 30, 1977, in accordance with 33 C.F.R. § 326.3, the COE sent letters to various agencies soliciting their opinion regarding the fill operation. Comments were received from several agencies including the Environmental Protection Agency and the Fish and Wildlife Service of the Department of the Interior, both of which recommended that the fill be removed.

On April 13, 1978, the city submitted a proposed alternative plan to the COE for dealing with the fill. The COE transmitted the proposed alternative to various federal and state agencies including the Environmental Protection Agency, the Interior Department, the Winnebago County Planner, the East Central Wisconsin Regional Planning Commission, and the Fox Valley Water Quality Planning Agency. Again, the Environmental Protection Agency and the Fish and Wildlife Service recommended that the fill be removed.

Thus, on June 2, 1978, the COE's district engineer wrote the Neenah director of community development and asked him to prepare a schedule for the removal of the unauthorized fill. The undisputed factual record before me supports the conclusion that the COE's request that the fill be removed only came after the COE had followed the procedures prescribed by 33 C.F.R. § 326.

Having set out the statutory and factual context of the instant case, I now will analyze the federal defendants' motion for summary judgment as to each of the plaintiff's causes of action and as to the United States' cross-complaint.

1284

## A. Due Process Claim

The plaintiff's first cause of action in its amended complaint is that the actions of the COE and the city threatens to deprive the plaintiff of property rights without due process of law as provided by the United States Constitution. In analyzing the plaintiff's contention, two issues must be analyzed: (1) whether the plaintiff corporation has a property interest in unauthorized fill material put in place by the city and (2) if so, whether it was deprived of such interest without due process.

The extent of a person or corporation's interest in a piece of land is defined by state law. In *Just v. Marinette County*, 56 Wis.2d 7, 201 N.W.2d 761 (1972), the Wisconsin supreme court considered the constitutionality of a state shoreland zoning ordinance. The plaintiffs who had filled a wetlands area bordering their property without securing a permit as required by state law, challenged the ordinance as effectively taking their property without compensation. In upholding the constitutionality of the zoning ordinance, the court stated:

"An owner of land has no absolute and unlimited right to change the essential natural character of his land so as to use it for a purpose for which it was unsuited in its natural state and which injures the rights of others. The exercise of the police power in zoning must be reasonable and we think it is not an unreasonable exercise of that power to prevent harm to public rights by limiting the use of private property to its natural uses." 56 Wis.2d at 17, 201 N.W.2d at 768.

Thus, any property interest the plaintiff might have in the fill material in question is, under state law, a limited interest.

Property rights in wetlands are also limited by federal statute. The court of appeals for this circuit recently upheld the constitutionality of the COE's authority to regulate activities on wetlands. In *United States v. Byrd*, 609 F.2d 1204, 1210–11 (7th Cir. 1979), the court held:

"We conclude that Congress constitutionally may extend its regulatory control of navigable waters under the Commerce Clause to wetlands which adjoin or are contiguous to intrastate lakes that are used by interstate travelers for water-related recreational purposes as defined by 33 C.F.R. § 209.120(d)(2)(i)(g) and (h) (1977) [now defined by 33 C.F.R. § 323.-2(a)(5) (1978)]. Furthermore, these regulatory definitions promulgated by the Corps are reasonably related to Congress' purpose: 'The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.' 33 U.S.C. § 1251(a)."

*See also, Leslie Salt Co. v. Froehlke*, 578 F.2d 742 (9th Cir. 1978); *Zabel v. Tabb*, 430 F.2d 199 (5th Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971); *United States v. Holland*, 373 F.Supp. 665 (M.D.Fla.1974).

In my view, the procedure mandated by 33 C.F.R. § 326 and followed by the COE in the instant case afforded the plaintiff any protection for its property interest which may have been due under the United States Constitution. The COE solicited the plaintiff for any statement it might wish to make regarding the fill operation. Similarly it solicited the opinion of the city, which was essentially operating at the behest of the plaintiff in performing the fill operation. The opinions of several state and federal agencies were requested with regard to the fill operation and the city's alternative proposal concerning the fill.

The court of appeals has held that Congress, acting through the COE, may constitutionally regulate the use of wetlands. The case at bar represents a situation in which wetlands were filled prior to obtaining a permit required by statute. In this situation the COE's regulations provide all interested parties with the opportunity to comment on whether the fill material should be allowed to remain in place. The Constitution requires no more than that.

## B. COE's Authority

The plaintiff's second cause of action alleges that the COE lacks authority to order removal of fill in a case such as the one at bar. After considering the statutory

and regulatory framework in which the COE was operating in this case, I disagree.

 33 U.S.C. §§ 1311, 1362(6) and (7) forbid the discharge of pollutants such as the fill material placed by the city of Neenah, in the absence of a permit. 33 U.S.C. § 1344 gives the COE the authority to issue such permits. I believe that regulations giving the COE authority to order people to cease and desist from further filling in the absence of a permit and which also authorize the COE to order the removal of such fill when it has been placed in contravention of 33 U.S.C. § 1311 are reasonably related to the COE's permit granting authority. This conclusion is supported by three courts which have previously considered the question. *United States v. D'Annolfo*, 474 F.Supp. 220 (D.Mass.1979); *United States v. Alleyne*, 454 F.Supp. 1164, 1169–70 (S.D.N.Y.1978); *Leslie Salt Co. v. Froehlke*, 403 F.Supp. 1292, 1297 (N.D.Cal. 1974), mod. on different grounds, 578 F.2d 742 (9th Cir. 1978). Accordingly, the federal defendants are entitled to judgment as a matter of law on the plaintiff's second cause of action.

## C. Arbitrary and Capricious Decision

 The plaintiff, in its third cause of action, alleges that the COE acted in an arbitrary and capricious manner in requiring the fill in question to be removed.

In my decision dated April 18, 1979, 469 F.Supp. 217, I held that the COE was correct in determining that the discharge of fill material by the city of Neenah into a wetland violated the 1972 amendments to the FWPCA. The undisputed record before me indicates that prior to requesting the city to remove the fill the COE considered the filling operation's impact on such factors as noise levels, land use, water quality, flora and fauna, aesthetics, economics, recreation, navigation, health and safety, and beach and shoreline conditions. The COE also considered the positions of agencies and persons who offered opinions and only rejected the city's alternative plan after the Environmental Protection Agency and the Fish and Wildlife Service urged that the fill be removed. In light of this record, I cannot find arbitrary and capricious conduct on

the part of the COE. Therefore, the federal defendants are also entitled to summary judgment on the plaintiff's third cause of action.

## D. Cross-Claim of the United States

On September 13, 1978, the United States filed a cross-claim against the city of Neenah seeking an order requiring the city to remove the fill material placed in the wetland in question and to refrain from future discharge of fill material into the wetland in the absence of a permit. The United States has now moved for summary judgment on this cross-claim.

 I have previously held that the fill in question was discharged in violation of 33 U.S.C. § 1311. I hold today that the COE properly followed its own regulations before requesting the city to remove the fill. Only this court's previously entered injunction stopped the city from fulfilling this request. This injunction was founded on the possibility that the roads in question did not lie within a wetlands area or that the COE had exceeded its authority in ordering the city to remove the fill. 455 F.Supp. at 1352. These two points having now been resolved adversely to the plaintiff, I believe that the United States is now entitled to the order it seeks.

## IV. CONCLUSION

Therefore, IT IS ORDERED that the federal defendants' motion for summary judgment with regard to the plaintiff's complaint be and hereby is granted.

IT IS ALSO ORDERED that the preliminary injunction entered on September 13, 1978, be and hereby is dissolved.

IT IS FURTHER ORDERED that the plaintiff's amended complaint be and hereby is dismissed.

IT IS FURTHER ORDERED that the United States' motion for summary judgment as to its cross-complaint be and hereby is granted.

IT IS FURTHER ORDERED that the city of Neenah remove the fill material discharged by it into the terminal section of

Glenayre Drive, 508 feet in length when measured along its center line from the manhole located at the intersection of Glenayre Drive and Skyview Drive and the terminal section of Skyview Drive, 135 feet in length when measured along its center line from the same manhole, all located in the Northeast ½ of Section 34, Town 20 North, Range 17 East, and restore that area to its pre-fill grade, within 120 days of this order.