Marcus CONANT, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 669–86 L.

United States Claims Court.

July 20, 1987.

Thomas G. Christmann, Watson, Folds, Steadham, Christmann Brashear and Tovkach, Gainesville, Fla., for plaintiff.

Dorothy R. Burakreis, Washington, D.C., attorney of record, with whom was Roger J. Marzulla, Acting Asst. Atty. Gen., Lands and Natural Resources Div., for defendant.

## OPINION

HORN, Judge.

This case came before the Court on a complaint filed by the plaintiff, Marcus Conant. Plaintiff seeks compensation under the Fifth Amendment to the Constitution for an alleged taking of his property due to actions initiated by the United States Army Corps of Engineers. Defendant responded by filing a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons discussed below, defendant's motion to dismiss is hereby granted.

### Background

Plaintiff owns property adjacent to the Santa Fe River in Alachua County, Florida. Beginning in the late 1960s, plaintiff constructed a series of commercial fish ponds on this property. This litigation involves the ninth in a series of ponds located on the plaintiff's property.

In accordance with its statutory authority, the United States Army Corps of Engineers (Corps) conducted an inspection of plaintiff's property and determined that the ninth pond on plaintiff's property partially

extended into wetlands contiguous with the Santa Fe River. *See* Section 404 of the Federal Water Pollution Control Act Amendments of 1972, Pub.L. No. 92–500, 86 Stat. 816 (1972), *amended by* the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566 (1977) (codified as amended at 33 U.S.C. § 1344 (1982)). Plaintiff was advised by the Corps that because of the location of the ninth pond on wetlands in proximity to the Santa Fe River, a Section 404 permit was required to authorize the placement of fill materials on the property in order to construct the pond. Plaintiff failed to apply for and did not obtain a Section 404 permit. In June, 1981, the Corps issued a cease and desist order to the plaintiff ordering him to halt any further work on the ninth pond.

Plaintiff had initially maintained that he was not required to obtain a Section 404 permit because he alleged that his fish farm was exempt from the Corps' permitting process under separate regulations promulgated by the Environmental Protection Agency (EPA), pursuant to its permitting authority under Section 402 of the Clean Water Act (codified as amended at 33 U.S.C. § 1342 (1982)). *See* 33 U.S.C. § 1328 (1982); 40 C.F.R. § 122.24(c)(2) and Appendix C thereto (1986).

Prior to filing a complaint in this Court, plaintiff had been engaged in four years of administrative challenges and litigation on related issues concerning this same ninth pond located on his property. Plaintiff originally filed a claim in January, 1982 with the United States Army Claims Service seeking $300,000 in compensation for lost profits resulting from the Corps' enforcement actions. The Army Claims Service denied the claim on July 13, 1982.

In January, 1983, plaintiff filed a complaint in the United States District Court for the Northern District of Florida alleging that the Corps had misapplied provisions of the Clean Water Act of 1977 to cover plaintiff's property. Plaintiff requested injunctive relief from the Corps' actions and compensatory damages of $300,000. On February 25, 1983, the District Court dismissed, with prejudice, plaintiff's complaint to the extent that it sought monetary damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2401 (1982). By order of April 7, 1983, the District Court dismissed, with prejudice, plaintiff's claim for injunctive relief. On February 27, 1984, the United States Court of Appeals for the Eleventh Circuit reversed the District Court's rulings and remanded the case. 727 F.2d 1115.

While his case was on appeal to the Eleventh Circuit, the plaintiff filed another claim with the United States Army Claims Service seeking $900,000 for lost profits. On February 21, 1984, the Claims Service denied this claim by the plaintiff.

On August 14, 1984, the District Court, after remand, again dismissed plaintiff's claim for monetary damages. In a final judgment, dated October 5, 1984, the District Court dismissed plaintiff's action on the merits and ordered him to restore the subject property to its original condition. *Conant v. United States*, No. 83–0002 (N.D.Fla. Oct. 5, 1984).

In its opinion, the District Court found that plaintiff was subject to the provisions of Section 404 of the Clean Water Act and was required to obtain a permit before beginning construction on the ninth pond. The Court noted that although the plaintiff's ponds may be exempt from the EPA Section 402 permit requirement, the ninth pond was not exempt from the Corps' Section 404 permitting process, since it was located on wetlands, and thus was within the "waters of the United States." 33 C.F.R. § 323.2(a)(3) (1986). The District Court held that:

(1) The northwest 65 feet, the northeast 68 feet and the north 138 feet of the northern most pond of the plaintiff, are within the 'waters of the United States', the construction of which required a permit from the U.S. Army Corp [sic] of Engineers pursuant to section 404 of the Clean Water Act of 1977;

(2) the plaintiff did not obtain a permit before discharging dredged or fill materials into the waters of the United States;

(3) plaintiff's use of the land is not an exempt activity under 33 U.S.C. § 1344 (section 404 of the Clean Water Act).

*Conant v. United States*, No. 83–0002, slip op. at 6–7 (N.D.Fla. Oct. 5, 1984).

The Eleventh Circuit subsequently affirmed the District Court's second decision. *Conant v. United States*, 786 F.2d 1008 (11th Cir.1986).

On October 22, 1986, plaintiff filed a complaint in this Court contending that the action of the Corps of Engineers with respect to the ninth pond on his property constituted a taking of his property, without compensation, in violation of the Fifth Amendment to the Constitution. Defendant argues that this Court should dismiss Counts I and III of plaintiff's complaint for lack of ripeness, since plaintiff has never applied for the requisite Section 404 permit. At the oral argument on July 2, 1987, plaintiff's counsel acknowledged that, to date, plaintiff has not applied for the subject permit.[1]

### Discussion

The sole issue now before this Court is whether, based upon the facts presented, and without having first exhausted required, administrative procedures, plaintiff can pursue an action for compensation under the Takings Clause of the Fifth Amendment to the Constitution.

The Secretary of the Army, acting through the Chief of Engineers, is authorized to issue permits for the discharge of dredged or fill material into the navigable waters under Section 404 of the Federal Water Pollution Control Act Amendments of 1972, Pub.L. No. 92–500, 86 Stat. 816 (1972), *amended by* the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566 (1977) [hereinafter the Clean Water Act]

(codified as amended at 33 U.S.C. § 1344 (1982)). Subsection (f)(2) states:

Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section. 33 U.S.C. § 1344(f)(2) (1982).

■ Based upon the documentation submitted by the parties herein, this Court agrees with the holding of the Federal District Court for the Northern District of Florida, No. 83–0002 (N.D.Fla. Oct. 5, 1984), as upheld by the United States Court of Appeals for the Eleventh Circuit, 786 F.2d 1008 (11th Cir.1986), that plaintiff's construction activities related to the ninth pond were subject to the provisions of Section 404 of the Clean Water Act and that plaintiff was required to seek a permit before placing dredged or fill material on the subject portion of his property.

There is no evidence in the record that plaintiff has ever applied to the Corps for a Section 404 permit. In fact, at the oral argument on July 2, 1987, plaintiff's counsel acknowledged that, to date, plaintiff has not made application for such a permit.

■ In circumstances, such as are presented in the instant case, in which a party is required by statute and/or regulation to seek a permit to undertake regulated activity, a Fifth Amendment taking claim does not arise until after a permit has been sought and denied and the effect of the denial results in economic detriment. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). *Riverside Bayview*

---

**1.** In his complaint in this Court, plaintiff demands compensation from the defendant on three counts for a total amount of $19,200,000. Count II, which claimed $18,600,000 for plaintiff's potential liability in civil penalties, was withdrawn upon oral motion of plaintiff's counsel at the oral argument on July 2, 1987. The Court approved the motion to withdraw Count II and therefore, need consider only Counts I and III of plaintiff's complaint, as filed.

Count I is a claim for $500,000 in lost profits from the ninth pond. In Count III, plaintiff seeks $100,000 in compensation for the alleged diminution in value of his property resulting from the actions by the Corps, as a result of which he claims he was prevented from completing his aquaculture project.

*Homes* is particularly apposite to the case at bar because it also dealt with a challenge to the Corps' exercise of its permitting responsibilities under Section 404 of the Clean Water Act and whether the exercise of such jurisdiction could constitute a Fifth Amendment taking. In *Riverside Bayview Homes*, the Supreme Court said:

> Moreover, we have made it quite clear that the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. [Citation omitted]. The reasons are obvious. A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred. 106 S.Ct. at 459.

This language exemplifies the necessity of a permit denial to finalize the administrative process.

It is a well-settled legal principle that a plaintiff is not entitled to seek judicial review before following the prescribed administrative procedures. *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981); *Burlington Northern Railroad v. United States*, 752 F.2d 627, 630 (Fed.Cir.1985). The existence of an administrative procedure presupposes that a claimant may be able to achieve a resolution of his claim without need to resort to judicial review. In this case, without a permit application having been filed, this Court cannot determine whether plaintiff would have been granted a permit and thus could have been free to use the wetlands area of his property for his desired purpose.

Nevertheless, plaintiff argued that a taking had occurred in this case, despite his failure to pursue the permitting process. Plaintiff cited to *Parkview Corp. v. Department of the Army, Corps of Engineers*, 490 F.Supp. 1278 (E.D.Wisc.1980), for the proposition that a claimant need not await denial of a permit before seeking judicial review when it is clear that to do so would be futile.[2]

In support of his futility argument, plaintiff alleged that the Corps' conduct to date demonstrates that it has already formalized a firm position on plaintiff's activity, adverse to his interests, and that for plaintiff to apply for a permit would be futile. The Court notes, however, that the record herein shows that the Corps' evaluation of plaintiff's activity thus far has been restricted to enforcement proceedings. All the documents to which plaintiff cited in support of his argument were clearly issued as part of the enforcement proceedings. Enforcement proceedings do not constitute proceedings on a permit application. The two types of proceedings cannot be considered equivalent. In the uncontroverted affidavit, submitted by the defendant, signed by Corps employee, Ronald H. Silver, who had worked on plaintiff's enforcement case, Mr. Silver indicated that the analysis the Corps had conducted to enforce its order would not be binding on any subsequent permit application review.

Furthermore, plaintiff's reliance on *Parkview Corp. v. Department of the Army, Corps of Engineers, supra,* is misplaced. Contrary to the situation in *Parkview,* the plaintiff in this case appears never to have been notified by the Corps in

---

**2.** Plaintiff also cited to *Levers v. Anderson*, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945). *Levers* addresses only a situation in which the Court was asked to determine whether failure to seek a rehearing, by filing a motion for reconsideration, was required to exhaust administrative remedies prior to resorting to judicial action.

In fact, the *Levers* Court, at page 222, 66 S.Ct. at page 73–74, clearly reaffirmed the long-settled principle set out in *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."

writing that it is unlikely he would be granted an after-the-fact permit. *See* 490 F.Supp. at 1282. In fact, as evidenced by Mr. Silver's affidavit and an attached letter he had sent to the plaintiff on April 14, 1983, the plaintiff was sent a permit application and invited to submit an after-the-fact permit regarding the property at issue in the Corps' enforcement action. (See Exhibit A to Defendant's Reply Memorandum.) None of the documents upon which plaintiff relies to support his allegation that the Corps has reached a final position discusses whether or not a permit is likely to be granted to the plaintiff.

In the case before the Court, plaintiff has failed to raise a sufficient level of doubt, either in the papers submitted to the Court or at the oral argument, that his permit application would not be duly processed. Therefore, this Court must proceed on the assumption that plaintiff may be able to obtain a satisfactory resolution of his claims through administrative channels. Furthermore, the law presumes that a government agency will act reasonably and in good faith in fulfilling its statutory duties. *Phoenix Railway v. Geary*, 239 U.S. 277, 282, 36 S.Ct. 45, 46, 60 L.Ed. 287 (1915); *Sanders v. United States Postal Service*, 801 F.2d 1328, 1333 (Fed.Cir.1986); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984); *Gaskins v. United States*, 227 Ct.Cl. 563, 566, 652 F.2d 70 (1981).

Upon review of an agency's determination, this Court's predecessor, the United States Court of Claims, in *Gaskins*, summarized the standard for challenging the integrity of an agency's actions and stated that:

"[t]he presumption is that government officials have acted in good faith in making their decisions. It takes almost irrefragable proof to overcome the presumption. The burden of doing so is on plaintiff." 227 Ct.Cl. at 566, 652 F.2d 70.

■ This Court believes that it would serve no purpose to require a claimant to exhaust administrative procedures before seeking judicial review when it is clear that resort to administrative action would be futile. In the instant case, however, plaintiff has not presented sufficient evidence to overcome the presumption that the Corps will process his permit application in good faith, based on the facts presented.

Finally, the Court notes that the plaintiff is not precluded, even now, from applying for the requisite permit. As discussed above, plaintiff was notified in a letter from the Corps dated April 14, 1983, that the revised Corps regulations provide for the acceptance and processing of after-the-fact permit applications.

■ Based on the facts presented in this case, this Court finds that plaintiff's claim for compensation under the Fifth Amendment to the Constitution is premature. Plaintiff has failed to apply for a Section 404 permit, as required by the applicable regulations. Therefore, Counts I and III of plaintiff's complaint are not ripe for adjudication and are hereby dismissed. Count II of plaintiff's complaint is dismissed pursuant to the motion of the plaintiff, as discussed earlier.

In dismissing plaintiff's claim for lack of subject matter jurisdiction, at this time, this Court holds only that plaintiff cannot maintain his suit because he has not pursued the prerequisite administrative procedures by applying to the Corps of Engineers for a permit, pursuant to Section 404 of the Clean Water Act. This Court expresses no view concerning whether the plaintiff is entitled to a permit or whether he would eventually have a claim for compensation if his permit application were to be denied, should he choose to submit one.

For the foregoing reasons, the defendant's motion to dismiss is granted. The Clerk is directed to enter judgment dismissing the complaint, costs to be awarded to the defendant.

IT IS SO ORDERED.