JUDITH CARROLL & others[1] *vs.* JAMES MARZILLI.

No. 08-P-1867.

Middlesex. September 15, 2009. - October 22, 2009.

Present: BERRY, KAFKER, & GRAINGER, JJ.

*Massachusetts Civil Rights Act. Injunction. Practice, Civil,* Preliminary
injunction. *Attorney General.*

In a civil action brought pursuant to the Massachusetts Civil Rights Act, G. L.
c. 12, § 11I (MCRA), by three plaintiffs who claimed that they had been
sexually assaulted by the defendant, the judge properly denied the plaintiffs'
motion for a preliminary injunction, which sought relief not only on behalf
of themselves but for all women of the Commonwealth, where the plaintiffs
failed to establish a risk of immediate irreparable harm to themselves, and
were not empowered by the MCRA to seek relief on behalf of all of the
women of the Commonwealth. [551-555]

CIVIL ACTION commenced in the Superior Court Department on
July 15, 2008.

A motion for a preliminary injunction was heard by *Sandra
L. Hamlin,* J.

*Wendy J. Murphy* for the plaintiffs.

*Karen A. Colucci* for the defendant.

KAFKER, J. The three plaintiffs, Judith Carroll, Heather Hart-
shorn, and Ellen Frith, claim that they were sexually assaulted
by the defendant, James Marzilli, and appeal from an order deny-
ing their motion for a preliminary injunction, which sought relief
not only on behalf of themselves but for all women of the Com-
monwealth. For the reasons discussed below, we conclude that
the requested pretrial relief pursuant to the Massachusetts Civil
Rights Act (MCRA) was properly denied. The plaintiffs have not
established a risk of immediate irreparable harm to themselves
and are not empowered by the MCRA to seek relief on behalf of
all of the women of the Commonwealth.

[1]Heather Hartshorn and Ellen Frith.

1. *Background.* The plaintiffs allege that Marzilli sexually assaulted them in separate incidents in either 2006 or 2007, and 2008. In these incidents, Marzilli allegedly groped the plaintiffs, touched their genital and breast areas while they were clothed, and made improper suggestions, all without invitation or consent. Each of the women generally claim to have felt pressure or to have been intimidated. A private investigator either purporting or appearing to act on Marzilli's behalf allegedly suggested to one of the plaintiffs, Judith Carroll, that it would be in her best interests not to pursue the matter or go to the press "because of the defendant's status as a State Senator who had done a lot of good things for people." Another plaintiff, Heather Hartshorn, who worked for a charitable organization run by Marzilli's wife, allegedly lost her job after complaining about the sexual assault.

Marzilli also allegedly assaulted at least four other unnamed women. He was arrested and released on bail, conditioned on his staying away from the various women he assaulted. There is no suggestion in this record that Marzilli has since violated the terms of his bail or otherwise has had any inappropriate contact, either directly or indirectly, with any of the plaintiffs (or any other woman).

2. *Discussion.* The plaintiffs, relying exclusively on the MCRA, G. L. c. 12, § 11I,[2] sought a preliminary injunction. The requested injunction, if entered, would have prevented Marzilli "and all others acting in concert or participating with" him from directly or indirectly approaching within 200 feet of the plaintiffs, their residences or places of employment, communicating with the plaintiffs or any member of their families, "[c]ausing or attempting to cause damage to the property, entitlements or employment rights of the [p]laintiffs or other wom[e]n" of the Commonwealth, preventing the plaintiffs or any other woman of the Commonwealth "from enjoying the full benefit of her real property, or from freely associating with other persons, or from enjoying full

[2]General Laws c. 12, § 11I, provides in part: "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages."

access to the public streets, sidewalks, restaurants, schools, or other places of public accommodation in the Commonwealth," or "[a]ssaulting, threatening, intimidating, coercing, following or harassing, or attempting to assault, threaten, coerce, follow, or harass" the plaintiffs or any other woman of the Commonwealth.

The basic standard for granting a preliminary injunction is well understood. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980).[3] The judge applied this standard, concluding that the plaintiffs had not shown by a preponderance of the evidence, see *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 136 (1988), either any substantial chance of success on the merits or any risk of irreparable harm in the absence of an injunction. Given the lack of any evidence that Marzilli, or anyone acting on his behalf, has made any attempt to contact any of the plaintiffs since his arrest, the judge's findings are well justified, at least in regard to the absence of "irreparable harm, not capable of remediation by a final judgment in law or equity." *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 87 (1984) (*CRINC*).[4]

The plaintiffs do not suggest that this finding constitutes an abuse of discretion, see *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 710 (1990) (order for preliminary injunction reviewed under abuse of discretion

---

[3] "Therefore, when asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 617.

[4] We do not pass judgment on the judge's decision regarding the plaintiffs' likelihood of success on the merits. Given the vagueness of the complaint, it is very difficult to identify the particular rights that have been allegedly violated by threats, intimidation, or coercion. That being said, the misconduct alleged is severe and there is an express or at least implied contention that Marzilli misused his position as a State senator to put pressure on the plaintiffs either to submit to his sexual advances or remain silent afterwards.

We further note that in this case, the requested injunctive relief is not aimed, as is usually the case, at preserving the fruits of success on the merits. To the contrary, it is entirely separate from any damages that may be realized as a result of the lawsuit and is essentially a request for a vast restraining order.

standard), but rather that the judge used an inappropriate decisional standard. Citing cases involving suits brought by the Attorney General on behalf of the public interest, the plaintiffs contend that they do not need to show immediate irreparable harm before a preliminary injunction may issue in their case.

The plaintiffs' reliance on *CRINC* and other similar cases involving the Attorney General is misplaced. The decision in *CRINC* "holds that when the Attorney General acts in the public interest to enjoin violations of statutory provisions, demonstration of immediate irreparable harm is not a prerequisite." *Commonwealth* v. *Wellesley Toyota Co.*, 18 Mass. App. Ct. 733, 737 (1984). As *CRINC*, 392 Mass. at 88, explains, "the Attorney General has a general statutory mandate, in addition to any specific statutory mandate, to protect the public interest. He also has a common law duty to represent the public and enforce public rights." Thus, "[w]hen the government acts to enforce a statute or make effective a declared policy [of the Legislature], the standard of public interest and not the requirements of private litigation" applies. *Id.* at 89, quoting from *United States* v. *D'Annolfo*, 474 F. Supp. 220, 222 (D. Mass. 1979). In this case, however, the Attorney General has not brought her own civil action or sought to intervene on behalf of the Commonwealth. Compare *Commonwealth* v. *Guilfoyle*, 402 Mass. at 130-133 (Attorney General filed civil rights complaint on behalf of the Commonwealth against juveniles screaming racial epithets and throwing rocks at black children in neighborhood); *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 469 (1994) (Attorney General intervened in civil rights suit on Commonwealth's behalf in case involving protests against abortion clinic); *Borne* v. *Haverhill Golf & Country Club, Inc.*, 58 Mass. App. Ct. 306, 308-309 (2003) (plaintiffs' complaint and Attorney General's complaint consolidated in suit against golf club).

The plaintiffs nonetheless contend that the MCRA places them in a similar position as a defender of the public interest, and that therefore, they are entitled to the *CRINC* standard. The MCRA does so, according to the plaintiffs, by providing private parties with a role in the enforcement of a remedial statute intended to prevent and redress injury to rights secured by the constitutions or laws of the United States or the Commonwealth. We disagree that the MCRA places private parties in a parallel

position to the Attorney General in terms of the enforcement of public rights.

The distinction between public and private causes of actions is expressly drawn in the MCRA. See *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 46 (1977) ("when an issue involves an area of law governed by a specific statute with a standing requirement, that issue is governed by the standing requirements of the particular statute and not by a general grant of standing"). Section 11H of G. L. c. 12, set out in relevant part below,[5] specifically authorizes the Attorney General to bring an action "for injunctive or other appropriate equitable relief . . . to protect the peaceable exercise or enjoyment of the . . . rights secured." If the Attorney General chooses to act, the action "shall be brought in the name of the commonwealth." *Ibid.* In contrast, it is a different provision of the MCRA, G. L. c. 12, § 11I, that applies to private parties. Section 11I specifically limits actions to those brought by the plaintiff "in his own name and on his own behalf." Compare G. L. c. 149, § 105A, as amended by St. 1996, c. 151, § 400 (an action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated"); G. L. c. 151, § 1B, as amended by St. 2008, c. 80, § 6 ("if a person is paid by an employer less than such overtime rate of compensation, the person may institute and prosecute in his own name and on his own behalf . . . and for others similarly situated"). The statute thereby strikes a careful balance between public and private causes of action. See testimony of Robert H. Bohn, Jr., Joint Committee on the Judiciary, submitted on March 7, 1979, in support of House Bill No. 3135, which became MCRA ("Recognizing the fact that the Attorney General does not have the resources to be the sole prosecutor of the civil rights of all the citizens of the Commonwealth, the bill before your Committee was drafted to achieve balance between public enforcement and

---

[5]"Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."

Carroll *v.* Marzilli.

private enforcement").[6] Private parties may sue on their own behalf for violations of their own civil rights and the Attorney General can bring suit to protect the civil rights of the public at large.[7]

Accordingly, the plaintiffs may seek preliminary injunctive relief only on their own behalf and not on behalf of the public at large. They are also held to the standards for preliminary injunctive relief applicable to private parties. See *CRINC*, 392 Mass. at 88 ("The *Cheney* court concerned itself with the appropriate standards where the dispute . . . was one between two private parties"). As private parties seeking a preliminary injunction under § 11I, the plaintiffs must show immediate irreparable harm, which they have failed to do. The preliminary injunction was therefore properly denied.

*So ordered.*

---

[6]Given the potentially wide-ranging sweep of the statute, the limitations contained within § 11I also ensure that the private parties have the necessary standing to pursue the alleged statutory violations.

[7]The plaintiffs have not relied on cases in which courts have expressly found private parties to be acting as private Attorneys General under other statutes. In at least two cases, *Edwards* v. *Boston*, 408 Mass. 643, 646 (1990), and *LeClair* v. *Norwell*, 430 Mass. 328, 332 (1999), involving suits brought pursuant to G. L. c. 40, § 53, the *CRINC* standard for preliminary injunctive relief was applied. This statute "provides a mechanism for [ten] taxpayers to enforce laws relating to the expenditure of tax money by the local government." *LeClair* v. *Norwell*, 430 Mass. at 332. Under the statute, private plaintiffs are expressly empowered to defend the public's right to the proper expenditure of public funds. This is quite different from the private right of action allowed under § 11I.