**Oliver Donovan ULMET,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America; John O. Marsh, Jr., in his capacity as Secretary of the Army, Defendants–Appellees.**

No. 88–2593.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1989.

Decided Oct. 31, 1989.

John William Toothman (Susan B. Smith, Grad, Toothman, Logan & Chabot, P.C., Alexandria, Va., on brief), for plaintiff-appellant.

Major Robert Cook McFetridge, Office of Judge Advocate Gen., Dept. of Army, Washington, D.C., (Henry E. Hudson, U.S. Atty.; Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., on brief), for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and TILLEY, United States District Judge

for the Middle District of North Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

Lieutenant Colonel Oliver D. Ulmet appeals from the district court's dismissal of his complaint seeking interlocutory equitable relief. Ulmet requested the court to issue an injunction or writ of mandamus ordering the United States Army to pay him back retirement salary and benefits which he claims are due him under a mandate from the Court of Appeals for the Federal Circuit. Although the district court ruled that it had jurisdiction over Ulmet's claim, it declined to exercise it and dismissed Ulmet's complaint. We affirm.

## I

This controversy originated in the Claims Court in 1985 when Ulmet, an officer in the Army Reserve, challenged the Army's interpretation of a statute pertaining to retirement of reserve officers. Title 10 U.S.C. § 1163(d), known as the "sanctuary provision," which at the time he brought this action provided that a soldier in the Army reserve who is on active duty and is within two years of becoming eligible for retired pay under the military retirement system may not be released from that duty before he becomes eligible for retired pay unless release is approved by the Secretary.

The dispute in the Claims Court concerned the definition of "active duty." Ulmet had accrued 15 years, 3 months, and 7 days of active service in the regular Army. When Ulmet was involuntarily released from active duty in 1973, he continued to serve in the Reserve, participating in several periods of what the Army classified as "active duty for training." Ulmet contended that those periods constituted active duty within the meaning of § 1163(d) and added an additional three years of active duty to his service record. Ulmet argued that he was therefore entitled to the sanctuary provision of § 1163(d). The Army disagreed with Ulmet and released him from active duty in 1983. Ulmet sued the Army in Claims Court under the Tucker Act, 28 U.S.C. § 1346. The Claims Court sustained the Army's position, but the Federal Circuit reversed. *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir.1987). Upon review of the legislative history of § 1163(d) and other applicable provisions, the Federal Circuit concluded that active duty included "active duty for training." 822 F.2d at 1083–87. The court remanded to the Claims Court for calculation of the relief due to Ulmet. Apparently, Ulmet and the Army disagree on the appropriate formula for computing the relief. While the case was pending before the Claims Court on remand, the Army moved to dismiss, claiming that an amendment of § 1163(d) enacted in response to the Federal Circuit's decision in *Ulmet* applies retroactively to nullify the court's mandate.[1] The Army contends that the amendment corrects a codification error that purportedly misled the Federal Circuit and therefore constitutes an exception to the law of the case doctrine.

The case has been pending before the Claims Court on remand since September 1987. The Army has indicated that if the Claims Court denies its motion to dismiss, it will appeal to the Federal Circuit.

In the interim, Ulmet has been unable to obtain adequate employment and apparently has been forced to reduce his standard of living drastically. In addition, members of Ulmet's family have required medical care which Ulmet could not afford. Ulmet petitioned the Claims Court, and the Army eventually made limited provision for medical benefits on a space-available basis at Fort Eustis hospital. Ulmet claims that

---

1. Title 10 U.S.C. § 1163(d) as amended by the italicized phrase currently provides:

   Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (*other than for training*) and is within two years of be-
coming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

these interim benefits are inferior to those due him under the Federal Circuit mandate.

Frustrated by the delay and the likelihood that the case will not be resolved for months if not years, Ulmet sought interlocutory relief in the United States District Court for the Eastern District of Virginia. In his complaint, Ulmet asked the court to issue an injunction or writ of mandamus ordering the Army to comply with the Federal Circuit's mandate. Ulmet predicated his request on the Claims Court's inability to order equitable relief and on a statement made by the Claims Court in a March 1988 hearing. In denying Ulmet's request for interim relief, the Claims Court said:

> [T]he retirement benefits which are real benefits cannot flow to Lt. Col. Ulmet until he is formally retired. And I can't order them to flow to him prior to the resolution of the legal issues that we have in this case.... We don't have that kind of vast equitable powers around to be able to say to the Army, "Well do it anyway, because it is nice and maybe more equitable."

> \*    \*    \*    \*    \*    \*

> If your theory is on some other than retirement duty, then you ought to be somewhere else.

Ulmet construes the Claims Court's statements to be a recommendation that he seek to enforce the Federal Circuit's mandate in another forum because the Claims Court lacks the power to order equitable relief.

Ruling from the bench, the district court held that although it had jurisdiction, principles of comity precluded it from granting interim relief in a case still pending before the Claims Court.

## II

Ulmet asserted jurisdiction under 28 U.S.C. § 1331 (diversity) and 28 U.S.C. § 1361 (mandamus). The Army contends that neither statute confers jurisdiction on the district court. To support its claim that the district court lacked jurisdiction under § 1331, the Army cites our decision in *Cook v. Arentzen,* 582 F.2d 870 (4th Cir.1978).

In *Cook,* we held that a Navy officer could not sue the Navy in federal district court under 28 U.S.C. § 1331 where the relief requested was back pay. We explained that since a request for back pay was a request for money damages, the Claims Court had exclusive jurisdiction over the case under the Tucker Act, 28 U.S.C. § 1346(a)(2).

*Cook* was decided before the Supreme Court's decision in *Bowen v. Massachusetts,* — U.S. —, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In *Bowen,* the Supreme Court considered whether a federal district court had jurisdiction over a suit brought by the state of Massachusetts against the Secretary of the Department of Health and Human Services for the recoupment of Medicaid reimbursements. The Secretary argued that the state sought money damages against the United States and that the action was therefore within the exclusive jurisdiction of the Claims Court. The Supreme Court rejected this argument, drawing a distinction between monetary relief and money damages:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay.... The fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as "money damages."

108 S.Ct. at 2732. The Court found that the state's suit was in the nature of an equitable action for specific relief seeking reimbursement to which the state was allegedly already entitled, rather than money in compensation for losses suffered as a result of the Secretary's refusal to make the payments. The Court held that the district court had jurisdiction.

Although Ulmet insists that he is seeking equitable relief not available in the Claims Court, his request for an injunction or writ of mandamus merely disguises the true

nature of the relief sought, which is back pay and benefits. In essence he seeks specific monetary relief as defined in *Bowen.* The district court properly determined that it had jurisdiction over this action.

### III

■ Ulmet claims that the district court abused its discretion in declining to exercise jurisdiction over this action, relying upon *Bowen* and a number of other federal appellate decisions. These decisions simply delineate the scope of jurisdiction in the Claims Court and the district court and recognize that a purely equitable district court action could be brought in tandem with a Claims Court proceeding for damages. They do not support Ulmet's claim that a district court may intervene in a case that has been decided by the Federal Circuit and is pending on remand before the Claims Court on the basis that the Claims Court is not acting with sufficient dispatch.

We are convinced that to retain jurisdiction over Ulmet's claim would strike at the heart of judicial comity. The doctrine of comity governs relations between courts of the same sovereign as well as courts of different sovereigns. *See generally* Wells, The Role of Comity in the Law of Federal Courts, 60 N.C.L. Rev. 59, 61 n. 5 (1981). In *Gregory–Portland Independent School Dist. v. Texas Education Agency,* 576 F.2d 81 (5th Cir.1978), the court ruled that the doctrine of comity precluded one district court from issuing an order that conflicted with an injunction issued by another district court in the same matter. The court said "considerations of comity and orderly administration of justice demand that the nonrendering court decline jurisdiction ... and remand the parties for their relief to the rendering court so long as it is apparent that a remedy is available there." 576 F.2d at 82–83 (quoting *Lapin v. Shulton,* 333 F.2d 169, 172 (9th Cir.1964)).

If the district court were to issue an injunction granting Ulmet the requested relief, it would certainly conflict with a subsequent determination by the Claims

Court that Congress intended its amendment to nullify the Federal Circuit mandate. In that event Ulmet would be entitled to no relief. It would be a serious interference with the orderly administration of justice for this court to order the Army to pay Ulmet interim back pay and benefits when the issue of his entitlement to those benefits is still pending before the Claims Court.

Once Ulmet's entitlement to retirement pay and benefits is conclusively established, the Claims Court is empowered by 28 U.S.C. § 1491(a)(2) to grant full relief. Section 1491(a)(2) states that the Claims Court may "provide an entire remedy and ... complete the relief afforded by the judgment ... [and], as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records...."

We do not agree with Ulmet that the Claims Court urged Ulmet to seek equitable relief in district court. Rather, the court said that if Ulmet could find a theory upon which to base his request for relief other than retirement duty, he was welcome to advance it in another forum. Ulmet did not assert a different theory before the district court but argued that the Federal Circuit's mandate granting him the requested retirement status entitled him to an injunction ordering the Army to pay interim retirement salary and benefits.

Principles of comity and the orderly administration of justice counsel against retaining jurisdiction over Ulmet's claim. We hold that the district court did not abuse its discretion in dismissing Ulmet's complaint.[2]

AFFIRMED.

MURNAGHAN, Circuit Judge dissenting:

I agree with the majority that the district court had jurisdiction to entertain LTC. Ulmet's claim. I disagree, however, that con-

2. The appellant's motion to supplement the record filed February 9, 1989, is granted.

cerns over comity justify the district court's refusal to exercise that jurisdiction to award interlocutory relief in a case where it is so sorely wanting. Therefore, I must respectfully dissent.

The Federal Circuit succinctly stated the factual background of Ulmet's original claim:

On June 6, 1958, Oliver Donovan Ulmet joined the United States Army as an enlisted soldier, and in 1966 was appointed a Reserve commissioned officer of the Army. On September 12, 1973, after serving in Vietnam, as part of a reduction in the number of military personnel following the cessation of hostilities in Southeast Asia, he was involuntarily released from active duty. He had attained the rank of Captain, and had accrued 15 years, 3 months, and 7 days of active service. In order to facilitate his transition to civilian life, he received $15,-000 of readjustment pay pursuant to 10 U.S.C. § 687 (1970) (repealed 1981).

From 1973 to 1985, Ulmet continued to serve in the Army Reserve, and participated in 15 periods of what was classified by the Army as active duty for training. During these periods, which ranged in duration from 2 days to over 1 year, he became skilled as a Training Requirements Analysis System manager. He attained the rank of Lieutenant Colonel, and amassed over 18 years of active service.

On September 7, 1983, contending that he had completed over 18 years of active service, LTC. Ulmet requested that he be retained on active duty, and allowed to complete 20 years of service necessary for retirement. The Army denied LTC. Ulmet's request and released him from active duty on September 31, 1983 [sic]. Subsequently, while on another active duty tour in April 1985, LTC. Ulmet requested assignment to various extended tours. These requests were also denied.

In this action in the United States Claims Court, LTC. Ulmet sought back pay, reinstatement to active duty status, and active duty credit for retirement from September 31, 1983 [sic]. Holding that a reservist was not entitled to include periods served on active duty for training for the time required for the sanctuary provision, 10 U.S.C. § 1163(d), the Claims Court granted defendant's motion for summary judgment. *Ulmet v. United States*, 10 Cl.Ct. 522, 525 (1986).

*Ulmet v. United States*, 822 F.2d 1079, 1081–82 (Fed.Cir.1987).

A panel of the Federal Circuit reversed the Claims Court, finding the plain language of the statute included within the time requirement any period of active duty for training. *Id.* at 1087.

Notwithstanding the mandate of the Federal Circuit, litigation has continued in the Claims Court over the nature of the relief to be accorded Ulmet. Furthermore, the Army has mounted another challenge to Ulmet's entitlement to any relief, claiming that a subsequently enacted change to the governing statute, exempting periods of active duty for training from the time requirement for the sanctuary provision of 10 U.S.C. § 1163(d), "clarifies" the statute and dictates an opposite result to that reached by the Federal Circuit.

Meanwhile, Ulmet has been left adrift. Pending a final resolution of his claim, he continues to suffer economic hardship, denied the pay or benefits that would accrue in either active duty or retirement status. The one concession granted Ulmet by the Army is a letter entitling him to some medical benefits.

Ulmet, alleging the absence of equity powers on the part of the Claims Court, *see* Claims Court Rule 65; *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 2737, 101 L.Ed.2d 749 (1988), brought this action in the United States District Court for the Eastern District of Virginia (Bryan, J.), seeking interim equitable relief pending a final disposition of his case. The district court, though acknowledging it had jurisdiction to consider Ulmet's complaint, declined to do so, observing that taking that sort of action could result in a deluge of Claims Court litigants seeking equitable relief. The Court dismissed the action and Ulmet appealed.

Considering the normal criteria of competing equities and legal merits, Ulmet is clearly qualified for interlocutory relief. He is suffering irreparable harm. Quite apart from the deprivation of pay (representing not only a lump financial amount, which, of course, could be reimbursed at a later date,[1] but also the financial security of regular payments which can be critical to an older and less employable member of the workforce, and to which one who has spent the majority of his adult life in the service of his country should be entitled), there are the tangible and intangible benefits of military retirement. Despite the Army's attempt to denigrate those benefits,[2] they are valuable and, indeed, accepted "rights" of the military retiree which may have importance beyond the undisputed financial benefit.

Perhaps the most important benefit, medical and dental treatment, has been compensated to some extent on an interim basis by the Army. But Ulmet correctly observes that this does not equal the quality or quantity of care available to a regular retiree. Indeed, if nothing else, seeking treatment under the arrangements provided by the Army is undoubtedly a bureaucratic nightmare.

Other benefits include free air travel, PX and commissary privileges, access to base facilities, etc. The financial advantage alone is considerable, perhaps in retrospect incalculable, and thus the damage is irreparable.[3]

More could be said on the subject. Equity clearly demands interim relief. The question is whether such relief is legally available from the district court.[4]

As the majority correctly determines, the district court has jurisdiction over Ulmet's claims under the rationale of *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The majority's perceived bar to the exercise of that jurisdiction, however, is illusory.

Much depends on a proper characterization of Ulmet's claim. Ulmet charges the Army, through its extended proceedings in the Claims Court, has failed to comply with the mandate of the Federal Circuit. That is not the case. The Federal Circuit reversed a grant of summary judgment by the Claims Court. Further litigation, *e.g.*, considering the nature and amount of appropriate relief, is not precluded.

While the letter of the Federal Circuit mandate may not be violated, the spirit is certainly contravened. The Federal Circuit has adjudicated, for all practical purposes, Ulmet's right to take advantage of the reserve officer sanctuary provisions. The facts underlying the basic entitlement are not in dispute.[5] Ulmet now seeks to retire at the date *least* advantageous to him financially under an application of the *Ulmet*

---

1. Of course, interim payments to Ulmet based on his present pay entitlement could also be recouped by the government at a later date, whether from his reserve retirement pay or other, similar sources. In general, the offsetting hardship to the Army from the interim relief sought by Ulmet is minimal.

2. Ulmet correctly notes that the military quantifies those benefits in extremely attractive financial terms in an attempt to induce individuals to join or stay in the service.

3. The Army maintains that *any* interim equitable relief is inappropriate because "[s]uch extraordinary remedies are intended to protect a party from imminent irreparable harm by maintaining the *status quo* until a full hearing can be held on the merits. Rule 65, Fed.R. Civ.P. *See Granny Goose, Inc. v. Teamsters*, 415 U.S. 423, 432–33 [, 94 S.Ct. 1113, 1121–22, 39 L.Ed.2d 435] (1973) [1974]; *Blackwelder Furni-*

*ture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977); *Maryland Undercoating Co., Inc. v. Payne*, 603 F.2d 477 (4th Cir.1979)." What the Army ignores is that, given the legal and factual realities of Ulmet's situation, and the mandate of the Federal Circuit, Ulmet's entitlement to the minimum interim retirement benefits herein requested *is* the status quo.

4. The majority finds fault with Ulmet's attempt to fashion a colloquy with the Claims Court judge into an "invitation" to seek equitable relief in the district court. The conflict, however, is irrelevant. If merited, Ulmet needs no invitation to seek interlocutory relief in the only forum where it is available.

5. Of course, the Army now argues the Federal Circuit's result is invalidated by a later statutory change, a dubious proposition, discussed further below, that does not affect the initial adjudication.

decision, a course for which the financial consequences have already been calculated by the Army. Consequently, given the possibility of irreparable harm, equity appears to demand Ulmet be accorded some interim relief pending final resolution of his claims.

The nature of that relief is the key to the district court's jurisdiction. Certainly an award of back pay and retroactive compensation for benefits properly falls within the category of money awards, clearly within the Claims Court's jurisdiction, however imperfect. An order to the Army granting Ulmet intervening retirement status, however, while necessarily implicating the monthly pay entitlement due a retiree, more neatly fits within the equitable powers of the court, particularly if predicated on the traditional basis of an extraordinary writ. Despite the Army's protestations, such relief would not involve extensive calculation, debate or deliberation.

Implementing such relief is also not barred by any concern of justiciability. Admittedly, "traditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions." *Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir.1985) (quoting *Mindes v. Seaman*, 453 F.2d 197, 199 (5th Cir.1971)). Here, however, there is no peculiar expertise to second-guess nor any interference with military discretion. The Army is compelled to follow the statutory provisions of § 1163, whose meaning has been adjudicated by the Federal Circuit.[6] *See Wilson*, at 359 (citing *Mindes* at 201) (court may review internal military

affairs where military has violated applicable statutes). The fact that initiation of many justified claims may be encouraged is hardly a grounds for declining to exercise jurisdiction.

The difficulties posed by the Army—the series of preliminary "decisions" that such relief would require, the interference with the discretionary actions of the Secretary of the Army,[7] etc., are in actuality immaterial.[8] The exercise of no specialized expertise—either military or Claims Court—is required. The computation of interim benefits, a matter only of arithmetic, in any event has already been accomplished. It requires no massive upheaval of federal bureaucracy for a clerk to issue Ulmet a retired military ID card (entitling him to all benefits) and push the computer button sending Ulmet a certain rate of pay per week. Alternatively, if the Secretary's discretion is sacrosanct, he has the option of ordering Ulmet to active duty, where similar benefits will accrue, pending the outcome of the suit.[9]

Such interlocutory ministerial acts, even if implicating specific monies, are, under the *Bowen* rubric, well within the jurisdiction of the district court. Because of their interlocutory status, they are just as clearly outside the purview of the Claims Court.

The majority ignores the fact that Ulmet's reason for seeking district court relief is not that the Claims Court is acting with insufficient dispatch—it is that the Claims Court cannot act in an interlocutory fashion at all.

Ulmet does not seek *back pay* and benefits—he seeks present pay and benefits on an interim basis at the minimum level to

---

6. In *Wilson, supra,* we enumerated four policy considerations vital to any evaluation of justiciability in a case involving internal military affairs:
   (1) the nature and strength of the plaintiff's challenge to the military determination;
   (2) the potential injury to the plaintiff if review is refused;
   (3) the type and degree of anticipated interference with the military functions;
   (4) the extent to which the exercise of military expertise or discretion is involved.
   As demonstrated above, Ulmet satisfies all four concerns.

7. Military retirement at twenty years is not automatic; it requires the permission of the Secretary of the Army. Such permission is, however, the ordinary course.

8. Such preliminary decisions may arguably be material for the Claims Court, whose limited equitable power is predicated upon a *final* judgment.

9. Of course, this option will have the ironic effect of permitting Ulmet to accumulate additional undisputed "good time" for retirement purposes.

which he is entitled under the mandate of the Federal Circuit. The issues being litigated in the Claims Court involve the exact amount of back pay present under various formulae. Ulmet here seeks relief under the *least* advantageous mode of computation.

If relief *cannot* be granted it must be on a jurisdictional basis, which the court denied, or by another principle of law. The avowed reason of the court was a concern that a stream of Claims Court litigants would darken the courthouse clamoring for interim relief. Congested dockets may evoke sympathy; they may not excuse a refusal to exercise judicial authority where jurisdiction and venue properly lie. *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 344, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976); *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 534, 537 (7th Cir.1982).

Construing the district court's reasoning as a broad concern over comity does not alter the result. Admittedly, principles of judicial comity and efficiency are implicated to a large extent when one court is asked to provide interim relief in an ongoing action in another court, *see Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), particularly where both courts are federal. *See id.* at 817–18, 96 S.Ct. at 1246–47; *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1976). But a generalized concern over comity does not waive "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

Although no rule delineates the precise criterion to be applied on those rare occasions when concurrent federal proceedings may excuse mandating judicial action, "the general principle is to avoid duplicative litigation." *Id.* Ulmet, however, does not seek to retry his case, or to gain identical relief through alternate channels. Ulmet seeks interlocutory equitable relief, available only in the district court, and requiring no duplicative adjudication as to nature or amount. Indeed, "concurrent" jurisdiction may be a misnomer; for the purposes of this action, Ulmet's sole remedy, and consequently sole jurisdiction, lies in the district court.

As Judge Bryan noted, Ulmet cites no case where a district court awarded equitable relief in a *pending* Claims Court action.[10] But, even before *Bowen*, courts have recognized that purely equitable district court proceedings may extend into the province of the Claims Court. *See, e.g., Minnesota v. Heckler*, 718 F.2d 852, 857–60 (8th Cir.1983); *Rowe v. United States*, 633 F.2d 799, 801–02 (9th Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981), including *tandem* equitable and damages proceedings. *See, e.g., Giordano v. Roudebush*, 617 F.2d 511 (8th Cir.1980) (upholding district court's exercise of equitable jurisdiction and transfer of monetary claims to the Claims Court); *Parkview Corp. v. Dept. of the Army*, 490 F.Supp. 1278, 1281–82 (E.D.Wisc.1980); *Bruzzone v. Hampton*, 433 F.Supp. 92, 95–96 (S.D.N.Y.1977). Indeed, "[s]uch bifurcation is unavoidable when the Claims Court lacks the power to grant the type of declaratory or injunctive relief sought." *State of Minnesota v. Heckler*, 718 F.2d at 857. The complicated intertwining of judicial jurisdiction and comity may require a delicate balancing; it does not require an absolute bar.[11]

The district court performed no balancing here. In any event, the proper result of such a weighing is evident. The equities of the circumstances at bar, certainly rather unique, co-joining a federal

---

**10.** A situation not remedied on appeal.

**11.** As the majority stated, quoting from *Gregory–Portland Independent School Dist. v. Texas Education Agency*, 576 F.2d 81 (5th Cir.1978), "considerations of comity and orderly administration of justice demand that the nonrendering court decline jurisdiction ... and remand the parties for their relief to the rendering court *so long as it is apparent that a remedy is available there*." 576 F.2d at 82–83 (quoting *Lapin v. Shulton*, 333 F.2d 169, 172 (9th Cir.1964)). (Emphasis added). If no apparent remedy lies, however, it is justice, not comity, that is offended.

appellate mandate and apparent equitable rights with the lack of equivalent Claims Court powers and the lack of any effect on final judgment in the Claims Court, contravene no principle of comity or efficiency.

There is no barrier, jurisdictional or legal, to the exercise of the district court's powers. Arbitrarily to refuse to do so is an abuse of whatever discretion the judge may possess.

The majority's perceived threat to further Claims Court proceedings is also illusory. The Army's arguments as to the effect of the amended statute are highly unpersuasive. Statutes are presumed to be prospective. A legislator's remarks that a change brings a statute closer in line with original intent does not mandate the *original effect* of the statute; indeed, it acknowledges the original version's "effect" may very well have been different than the amended version.[12]

Even a *meritorious* argument as to statutory construction is irrelevant. The mandate of the Federal Circuit has issued. Given the factual scenario, Ulmet's rights to some final relief have in a sense "vested" for purposes of equity, however subject to defeasance. Given the arguably irreparable nature of his injury, the right of Ulmet to interim relief is relatively unaffected by the Army's newest statutory theory, or quibbling as to the precise monetary award.

If the majority is correct, the absence of such interim relief entails the existence of a wrong without a right, a situation abhorred by the law, and a situation whose remedy is apparent, and well within the power of the district court.

---

12. After preparation of this opinion, a judgment of the Claims Court issued, complying with the mandate of the Federal Circuit. The court decided in Ulmet's favor on the Army's statutory claims and affixed a constructive retirement date, coincidental with that requested by Ulmet in this action. Unfortunately for Ulmet, further proceedings appear necessary to determine the precise award, not rendering moot his request for interim equitable relief.