SHEDD, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority except for its unnecessary restriction of the nationwide injunction entered by the district court in response to von Drehle Corporation’s unlawful actions.[1] In 2013, we affirmed a jury verdict in favor of Georgia-Pacific Consumer Products, LP on its contributo *723 ry infringement claim against von Drehle, and we remanded the case for further proceedings, including consideration of Georgia-Pacific’s request for injunctive relief. Despite the fact that Georgia-Pacific had by that time lost similar litigation in the Eighth and Sixth Circuits, we rejected von Drehle’s belated attempt to assert claim and issue preclusion as affirmative defenses, and we also found that there were no “special circumstances” (including comity) permitting the district court to raise the preclusion defenses sua sponte. On remand, the district court permanently enjoined von Drehle from interfering with Georgia-Pacific’s trademark rights. The parties agree that the scope of the injunction is nationwide.
Viewing this appeal under our normal standard of review, the district court did not abuse its broad equitable discretion by entering a nationwide injunction. The majority’s contrary decision, limiting the scope of the injunction to the states within, this circuit, is based on misapplication of the discretionary doctrine of comity; fails to accord proper respect to our 2013 opinion; and runs counter to a fundamental purpose of the Lanham Act, which is “to provide national protection for trademarks used in interstate and foreign commerce.” Park’N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 193, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). The result of the majority’s opinion is that Georgia-Pacific will be deprived of the complete and effective relief to which it is entitled, and von Drehle, relying on that opinion, will believe that it is permitted to continue interfering with Georgia-Pacific’s trademarks in 45 states. The Lanham Act authorizes federal courts to issue injunctive relief “according to the principles of equity and upon such terms as the court may deem reasonable,” 15 U.S.C. § 1116(a), but there is nothing equitable or reasonable about this result, and its peculiarity is self-evident, see, e.g., United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 142 (3rd Cir.1981) (“Protection of infringers is not a purpose of the Lanham Act. On the contrary, the Act’s objective is the protection of the trademark and the public.”).
I
We have previously detailed the history of this and related litigation. See Georgia Pacific Consumer Prods., LP v. von Drehle Corp., 618 F.3d 441 (4th Cir.2010) (“Georgia-Pacific I”); Georgia Pacific Consumer Prods., LP v. von Drehle Corp., 710 F.3d 527 (4th Cir.) (“Georgia-Pacific II ”), cert. denied, — U.S. -, 134 S.Ct. 393, 187 L.Ed.2d 146 (2013). I will highlight certain aspects of this litigation history to better explain my disagreement with the majority’s decision.
Since the early 2000s, Georgia-Pacific has manufactured and marketed throughout the country a touchless paper towel dispenser under the “enMotion” product line. The dispenser is designed for use in the “away-from-home” restroom market, and Georgia-Pacific owns several federally registered trademarks associated with the enMotion line. The Georgia-Pacific dispenser was different in size and dimensions from competing dispensers, and Georgia-Pacific developed high-quality paper towels that were designed specifically for use in the Georgia-Pacific dispensers. Georgia-Pacific leased its dispensers to distributors. The leases between Georgia-Pacific and its distributors, and the subleases that the distributors were required to enter into with end-user customers such as hotels and restaurants, stipulated that only Georgia-Pacific paper towels were to be used in the dispensers.
In July 2005, Georgia-Pacific filed this lawsuit against von Drehle in the Eastern District of North Carolina asserting sever *724 al claims for relief, including one for contributory trademark infringement in violation of 15 U.S.C. § 1114(1).[2] The gist of the contributory infringement claim is that von Drehle, a North Carolina corporation with its principal place of business in Hickory, North Carolina, manufactured and marketed nationally a line of paper towels (sometimes referred to as “the 810-B paper towels”) that were designed for use in Georgia-Pacific’s paper towel dispensers. “The von Drehle paper towels were inferi- or in quality to the [Georgia-Pacific] paper towels, but von Drehle and its distributors marketed the von Drehle paper towels as a cheaper alternative for use in the [Georgia-Pacific] dispensers, a practice known in the industry as ‘stuffing.’” Georgia-Pacific II, 710 F.3d at 529.
Partially due to an erroneous summary judgment ruling in von Drehle’s favor, which we vacated in our 2010 Georgia-Pacific I decision, over six years elapsed before Georgia-Pacific was able to present its contributory trademark infringement claim to a jury. During a January 2012 trial, the jury found in Georgia-Pacific’s favor and awarded damages in the amount of $791,431, which represent “all of the profits that von Drehle earned from the sale of its 810-B paper towels from 2005 to the date of trial.” Majority Op., at 712. In the damages award, no distinction has ever been made between the profits earned from von Drehle’s sales within or outside the Fourth Circuit.
Initially, Georgia-Pacific’s victory was short-lived. Two months after trial, the North Carolina district court (acting on von Drehle’s motion and sua sponte) set aside the jury verdict and granted judgment as a matter of law to von Drehle based on grounds of claim and issue preclusion. See Georgia-Pacific Consumer Prods., LP v. von Drehle Corp., 856 F.Supp.2d 750 (E.D.N.C.2012). The court’s decision stemmed from the judgments in two related cases filed by Georgia-Pacific against von Drehle distributors. In both cases, Georgia-Pacific asserted, among other things, a claim for contributory trademark infringement based on these distributors’ marketing of the von Drehle paper towels for use in Georgia-Pacific’s dispensers.[3]
Georgia-Pacific filed the first of these cases in September 2008 — more than three years after it filed this action — in the Western District of Arkansas against Myers Supply, Inc. In July 2009, while the original case against von Drehle was pending in the North Carolina district court, the Arkansas district court conducted a bench trial and ruled against Georgia-Pacific. Applying a different legal analysis than the one we set forth in Georgia-Pacific I, see Georgia-Pacific II, 710 F.3d at 531 n. 5, the Arkansas district court determined that Myers Supply was aware *725 that its customers were “stuffing” von Drehle paper towels into Georgia-Pacific’s dispensers, but the stuffing did not create a likelihood of confusion as to the origin of the paper towels and, therefore, did not constitute trademark infringement. The Eighth Circuit subsequently affirmed the Arkansas district court decision. See Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc., 621 F.3d 771 (8th Cir.2010).
Georgia-Pacific filed the second action in May 2009 against Four-U-Packaging, Inc. in the Northern District of Ohio. In November 2011, shortly before trial in the North Carolina district court, the Ohio district court granted summary judgment against Georgia-Pacific, holding that the action was barred by the judgment in the Myers Supply case. See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 821 F.Supp.2d 948 (N.D.Ohio 2011). In December 2012, while Georgia-Pacific’s appeal of the North Carolina district court’s decision to grant judgment as a matter of law to von Drehle was pending in this Court, the Sixth Circuit affirmed the Ohio district court decision. See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 701 F.3d 1093 (6th Cir.2012). The Sixth Circuit based its ruling in part on the fact that the North Carolina district court had set aside the jury verdict against von Drehle and dismissed the case. The Sixth Circuit explained that a primary goal of issue preclusion “is to ‘foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions,’ ” and it concluded that “[bjecause judgment in Georgia-Pacific’s favor was set aside, application of issue preclusion in this case poses no risk of creating inconsistent rulings.” Id. at 1103 (quoting Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).
At the time, the Sixth Circuit’s observation about the status of the North Carolina district court case was accurate. However, four months after the Sixth Circuit’s decision, we held in Georgia-Pacific II that the North Carolina district court erred in setting aside the jury verdict and awarding judgment in favor of von Drehle. We first concluded that von Drehle waived the preclusion defenses by not asserting them in a timely manner and, therefore, the district court abused its discretion by considering them. As we explained, von Drehle’s counsel had been immediately notified of the 2009 Arkansas district court decision in Myers Supply, but von Drehle waited approximately 480 days before attempting to amend its answer to assert preclusion as an affirmative defense.
More pertinent to the comity issue on which the majority relies, we also held that the North Carolina district court erred by considering the preclusion defenses sua sponte. Notably, von Drehle specifically argued to us that the district court was empowered to act sua sponte “where, as here, all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata.” Brief of Appellee, No. 12-1444, at 30 (4th Cir. Sept. 6, 2012) (emphasis added) (internal punctuation and citation omitted). Further, von Drehle argued that “[i]n raising preclusion on its own motion as an independent ground for dismissal, the trial court was protecting not just itself, but also the entire judiciary-” Id. at 31.
We recognized that sua sponte consideration of a preclusion defense may be appropriate in “ ‘special circumstances,’ ” such as when a court is on notice that it has previously decided the issue in another case and raises the defense to avoid “ ‘unnecessary judicial waste.’ ” Georgia-Pacif *726 ic II, 710 F.3d at 535 (quoting Ariz. v. Calif., 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000)). However, despite von Drehle’s invocation of the doctrine of comity and the need to protect “the entire judiciary,” we found that “von Drehle [had] not identified [any] ‘special circumstance’ justifying the district court’s unusual action.” Georgia-Pacific II, 710 F.3d at 535. We explained that “this case was particularly ill-suited for sua sponte consideration of preclusion defenses that were known long before trial, given that the issue of trademark infringement already had been decided by the jury. Thus, the district court’s sua sponte consideration of the preclusion defenses actually wasted judicial resources, rather than sparing them.” Id.
Finally, we also observed that by relying on Myers Supply as grounds for setting aside the jury verdict, the district court violated the mandate rule because it failed to “implement both the letter and spirit” of the mandate of Georgia-Pacific I. Georgia-Pacific II, 710 F.3d at 536 n. 13. For all of these reasons, we remanded this case “with the specific instruction that the district court reinstate the jury verdict in favor of Georgia-Pacific and consider Georgia-Pacific’s requests for injunctive and other appropriate relief.” Id. at 536.
von Drehle petitioned for panel rehearing or rehearing en banc arguing, among other things, that “[a]voiding conflict with sister circuits is especially important,” and the panel’s waiver analysis “violates principles of comity, fairness, and justice.” Pet. for Reh’g or Reh’g En Banc, No. 12-1444, at 10 (4th Cir. Mar. 28, 2013) (emphasis added). Further, von Drehle again invoked “the demands of comity” in seeking to justify the district court’s sua sponte consideration of the preclusion defenses, and it noted that “[u]nder the panel’s holding, there will now be years of litigation as [Georgia-Pacific] invokes the result here and seeks to apply it to new and pending cases, seeking to undo the decisions in Myers, Four-U, and the two Courts of Appeals that have affirmed those decisions.” Id. at 15. von Drehle concluded that it “is difficult to imagine a result less conducive to judicial efficiency or less respectful of the decisions of coordinate courts that have previously addressed the identical dispute.” Id. The rehearing petition was denied, von Drehle subsequently asserted comity as a ground warranting review in its unsuccessful petition for certiorari review of the Georgia-Pacific II decision. See Pet. for Writ of Cert., No. 13-41, at 22-25 (U.S. July 8, 2013).
On remand to the North Carolina district court, the parties briefed and argued whether Georgia-Pacific is entitled to in-junctive relief and, if so, what the scope of that relief should be. Regarding the scope, von Drehle argued (among other things) that any injunction “should be narrowly tailored to protect the legitimate rights of von Drehle and its distributors” and “must account for the rulings of the Eighth and Sixth Circuits and for [Georgia-Pacific’s] position that each distributor and each state are different.” von Drehle Corp.’s Response in Opp. to Georgia-Pacific’s Renewed Mot. for Perm. Inj., No. 5:05cv478-BO(1), at 16 (E.D.N.C. May 24, 2013). However, despite specifically arguing in the Georgia-Pacific II appeal and petition for certiorari review that the doctrine of comity factors in this case, von Drehle does not appear to have specifically invoked comity as a basis for denying or limiting injunctive relief.[4]
*727 Following full briefing and a hearing, the North Carolina district court granted Georgia-Pacific’s motion for injunctive relief. Applying the proper legal test, which it gleaned from eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), the court found: (1) Georgia-Pacific “suffered irreparable injury to its trademark and the reputation of its enMotion brand” by von Drehle’s infringing activities, which prevented Georgia-Pacific “from controlling the quality of paper towels dispensed from its en-Motion dispensers and further confused and deceived customers;” (2) the jury award is inadequate as it would not prevent von Drehle “from continuing] to infringe in the future, policing [von Drehle’s] sales of its paper towels would be onerous, and [von Drehle] has asserted throughout that its actions did not constitute trademark infringement;” (3) the balance of hardship favors Georgia-Pacific as von Drehle’s “activities have been found to have infringed [Georgia-Pacific’s] trademarks and [von Drehle] has no equitable interest in perpetrating trademark infringement;” and (4) “the public interest is best served by a permanent injunction that would prevent further trademark infringement.” J.A. 854 (internal punctuation and citations omitted). Based on these findings, the court enjoined von Drehle “from interfering directly or indirectly” with Georgia-Pacific’s trademark rights and specified that “any deliberate or purposeful placement” of von Drehle’s paper towels in Georgia-Pacific’s enMotion dispensers “shall constitute a violation of this permanent injunction.” J.A. 855.
II
“A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant’s conduct in the past.” NLRB v. Express Pub. Co., 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930 (1941). As a general rule, a federal court’s injunctive order “operate[s] continuously and perpetually upon the [party] in relation to the prohibited conduct,” and it extends “throughout the United States.” Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451, 52 S.Ct. 238, 76 L.Ed. 389 (1932).
The Lanham Act reflects this broad power, authorizing federal courts to issue injunctive relief to a prevailing plaintiff “according to the principles of equity and upon such terms as the court may deem reasonable.” 15 U.S.C. § 1116(a). When trademark infringement has been proven, “an injunction is the preferred remedy to insure that future violations will not occur,” Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir.1995) (internal punctuation and citation omitted), and it should be crafted to provide complete relief to the plaintiff, PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir.2011). The “scope of injunctive relief is dictated by the extent of the violation established,” Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and the Lan-ham Act authorizes a district court to enter a nationwide injunction prohibiting trademark infringement, see Majority Op., at 715.
A trademark plaintiff who is entitled to injunctive relief “is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor *728 as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted.” William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 68 L.Ed. 1161 (1924). “The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, renewable on appeal for abuse of discretion.” eBay, Inc., 547 U.S. at 391, 126 S.Ct. 1837. Under this standard, we are not at liberty to disturb an injunction simply because we would have decided the matter differently in the first instance. Centro Tepeyac v. Montgomery County, 722 F.3d 184, 188 (4th Cir.2013) (en banc). Instead, we may find an abuse of discretion only if the court applied an incorrect injunction standard, rested its decision on a clearly erroneous finding of a material fact, or misapprehended the law with respect to underlying issues in litigation. Id.
Viewing this appeal properly and under this standard, the district court did not abuse its discretion. The court applied the correct injunction standard, did not rely on a clearly erroneous finding of material fact, and did not misapprehend the law with respect to the underlying issues of this case. Notably, the majority does not challenge the court’s determination that injunctive relief is necessary to provide complete relief to Georgia-Pacific for von Drehle’s infringing activities; does not quarrel with the language of the injunction order prohibiting von Drehle “from interfering directly or indirectly” with Georgia-Pacific’s trademark rights and specifying that “any deliberate or purposeful placement” of von Drehle’s paper towels in Georgia-Pacific’s enMotion dispensers “shall constitute a violation of this permanent injunction;” and does not assert that the evidence presented below fails to support the court’s determination that a nationwide injunction is warranted.
Instead, relying on the doctrine of comity, the majority holds that the nationwide scope of the injunction is overbroad under the circumstances of this case. In the majority’s view, the injunction should not extend to the Eighth and Sixth Circuits, which (respectively) decided Myers Supply and Four-U-Packaging, because that “would amount to a direct and unseemly affront to those courts” and would “create a direct and perhaps irreconcilable conflict as to Georgia-Pacific’s trademark rights [in those circuits], leaving litigants and others in those States confused.” Majority Op., at 716. The majority extends its limitation on the injunction to the remainder of the federal circuits (other than the Fourth Circuit) because courts in those circuits — when presented with litigation involving Georgia-Pacific’s trademarks— “would be faced with the question of whether to follow the Fourth Circuit on the one hand or the Eighth and' Sixth Circuits on the other.” Id. at 716.
The doctrine of comity is “not a rule of law, but one of practice, convenience, and expediency.” Mast, Foos, & Co. v. Stover Mfg. Co., 177 U.S. 485, 488, 20 S.Ct. 708, 44 L.Ed. 856 (1900). “It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative.” Id. (emphasis added). Although “comity governs relations between courts of the same sovereign,” Ulmet v. United States, 888 F.2d 1028, 1031 (4th Cir.1989), the rule is rarely applied in this context, and only when it is essential to avoid “an unnecessary burden on the federal judiciary” and to prevent “the embarrassment of conflicting judgments.” In re Naranjo, 768 F.3d 332, 348 (4th Cir.2014) (internal punctuation and citation omitted).
*729 In this context, comity is closely akin to the doctrines of issue and claim preclusion, see Allen v. McCurry, 449 U.S. 90, 95-96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (explaining that “res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system”). Like those doctrines, “[cjomity works most efficiently where previously filed litigation is brought promptly to the attention of the district court, and the court defers,” Church of Scientology of Cal. v. U.S. Dept. of Army, 611 F.2d 738, 750 (9th Cir.1980).
Ill
The majority’s limitation of the scope of the injunction to the five states within this circuit deprives Georgia-Pacific of the complete and effective relief to which it is entitled. I have concerns generally about utilizing the doctrine of comity in this manner. See United States v. Gillock, 445 U.S. 360, 373, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (noting that “where important federal interests are at stake, ... comity yields”); Nelson v. Berry, 19 CCPA 1270, 59 F.2d 351, 353 (1932) (noting that when applying the doctrine of comity, “courts are not at liberty to disregard rights which the law assures to litigants”). However, I will limit my discussion to two specific reasons why I believe the majority has erred.
First, in Georgia-Pacific II, we rejected application of the comity doctrine in this litigation. As noted, by the time we decided Georgiar-Pacific II, both the Eighth and Sixth Circuits had resolved the Myers Supply and Four-U-Packaging cases, and we were presented squarely with the question of whether “special circumstances” existed to warrant the district court’s sua sponte consideration of von Drehle’s preclusion defenses based on those cases. Despite von Drehle’s invocation of the comity doctrine, we held that no “special circumstances” justified the district court’s action. In other words, in what some could consider to have been the creation of an “embarrassment of conflicting judgments,” see In re Naranjo, 768 F.3d at 348, and “a direct and unseemly affront” to the Sixth and Eighth Circuits, Majority Op., at 716, we rejected “the demands of comity,” Brief of Appellee, No. 12-1444, at 30 (4th Cir. Sept. 6, 2012), allowed the jury verdict in favor of Georgia-Pacific to stand, and remanded the case for the district court to consider Georgia-Pacific’s request for injunctive and other relief.
Of course, the injunction per se was not then before us,, but the same comity concerns now raised by von Drehle and the majority were. Given that we had previously admonished the district court of its obligation to “implement both the letter and spirit” of our mandate, Georgia-Pacific II, 710 F.3d at 536 n. 13, it is hardly surprising that the court determined that the comity doctrine had no bearing on the scope of injunctive relief to which Georgia-Pacific is entitled. Indeed, our rejection of the comity doctrine arguably had become — and remains — the law of the case. See Winston v. Pearson, 683 F.3d 489, 498 (4th Cir.2012) (explaining law of the case doctrine). Under these circumstances, where von Drehle barely argued (if at all) comity in opposition to the injunction request and the court’s injunction order is entirely consistent with our mandate, the court did not abuse its discretion.
Second, and in any event, the comity doctrine applied by the majority simply has no bearing in this case. Georgia-Pacific proved at trial that von Drehle infringed on its trademark rights on a national scale, we affirmed that judgment in Georgia-Pacific II, and the nationwide *730 injunction prohibits von Drehle — and no one else — from further infringement. Like all injunction eases, the district court retains the power to enforce its injunction against von Drehle by contempt proceedings, but it has no authority under the injunction to command any other party (or any court) with respect to Georgia-Pacific’s trademarks.[5]
Nothing about this rather ordinary process undermines the law in any other circuit, where any party other than von Drehle is currently'permitted (at their own risk) to “stuff’ Georgia-Pacific’s dispensers. If Georgia-Pacific chooses to litigate its trademark rights against other parties in other circuits, the nationwide injunction will not preclude courts in those circuits from deciding all pertinent issues, including trademark and preclusion issues.[6] Of course, those courts will be presented with the so-called “embarrassment” of the conflicting circuit court judgments, but that circumstance arose when we filed Georgictr-Pacific II, not when the district court enjoined von Drehle, and it remains in existence regardless of whether the injunction is limited or not.[7]
The facts and circumstances of this case differ from Virginia Society for Human Life, a case in which we vacated a nationwide injunction based on the comity doctrine. There, an issue advocacy group sued the Federal Election Commission (“FEC”) seeking a declaration that a particular regulation was unconstitutional. The district court held that the regulation was unconstitutional and issued a nationwide injunction preventing the FEC from enforcing the regulation. We found the injunction to be overbroad for two reasons. First, we concluded that the injunction was “broader than necessary to afford full relief’ to the advocacy group because a limited injunction adequately protected the group. 263 F.3d at 393. Second, we concluded that the injunction had “the effect of precluding other circuits from ruling on the constitutionality” of the regulation because it prohibited the FEC from attempting to enforce it. Id. Unlike Virginia Society for Human Life, the nationwide injunction before us is necessary to provide complete relief to Georgia-Pacific, and as I have explained, the injunction does not preclude other courts from ruling on the propriety of the “stuffing” practice of parties other than von Drehle in relation to Georgia-Pacifie’s trademarks.
IV
One final observation is in order. Even though I believe that it is unfair to deny Georgia-Pacific the nationwide injunctive relief to which it is entitled, I question whether the limitation of injunctive relief *731 to the states within this circuit ultimately will protect von Drehle from liability in future litigation.
As noted, von Drehle is a North Carolina corporation that operates out of Hickory, North Carolina. Georgia-Pacific has proven in this case that von Drehle’s manufacturing and marketing activities, that emanated from North Carolina but caused infringement nationally, constitute contributory trademark infringement. Presumably, if von Drehle is freed from the nationwide constraints of the injunction, it will resume its North Carolina-based activities of manufacturing paper towels and marketing them to distributors with knowledge that the towels will be stuffed into Georgia-Pacifie’s dispensers. Although von Drehle may limit its distribution of paper towels to entities outside of the Fourth Circuit in an effort to comply with a limited injunction, it will nonetheless be engaging in the very conduct (ie., manufacturing and marketing) that gave rise to its liability in this case, and it will be doing so within the Fourth Circuit, where such conduct is prohibited.
Therefore, unless von Drehle relocates its manufacturing and marketing activities outside of this circuit, it seems reasonable to believe that any future distribution of paper towels for the purpose of stuffing Georgia-Pacific’s dispensers anywhere would violate even the limited injunction called for by the majority, and Georgia-Pacific would be entitled to seek contempt relief. Moreover, even assuming that such conduct would not violate a limited injunction, there seems to be no reason that Georgia-Pacific could not file another lawsuit similar to this one seeking damages, and the lack of a nationwide injunction would not preclude Georgia-Pacific from recovering all of the profits von Drehle earned anywhere in the nation as a result of its infringing activities.
V
Georgia-Pacific is entitled to complete and effective injunctive relief to prevent von Drehle from continuing to infringe on its trademarks. The district court considered the proper factors and concluded that a nationwide injunction is necessary to provide this relief. Because the district court did not abuse its discretion in reaching this conclusion, and bécause we should accord proper respect to our decision in Georgia-Pacific II, we should affirm the injunction. Accordingly, I concur in part and dissent in part.

. Despite my partial concurrence, I do not agree with the majority's assertion that "von Drehle reasonably believed that its [infringing] conduct was lawful.” Majority Op., at 719.

. See Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ("[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is [contribu-torily] responsible for any harm done as a result of the deceit.” (emphasis added)).

. von Drehle has criticized Georgia-Pacific's "multi-front litigation” strategy, but "[ejffec-tive enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights.” Scotch Whisky Ass’n v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir.1992) (internal punctuation and citation omitted). Moreover, under the majority's view that the nationwide injunction is inappropriate, Georgia-Pacific will be required to engage in a multi-front strategy in the future to protect its trademark rights.

. In addition to not arguing comity per se before the North Carolina district court, von Drehle did not cite to any authority holding that comity warranted denial or limitation of injunctive relief. This fact stands in contrast to von Drehle's argument to us. See Appel *727 lant’s Opening Brief, at 50-56 (citing Va. Soc’y for Human Life, Inc. v. FEC, 263 F.3d 379 (4th Cir.2001), and arguing that the injunction “violates this Court's precedent and basic principles of comity”).

. Under the majority’s rationale, I cannot help but wonder when my colleagues would ever uphold a nationwide injunction. Anytime such an injunction is entered, the argument could be made that the injunction interferes with other courts’ ability to decide the matter at issue.

. In that event, under the generally prevailing “last in time” rule, the later judgment — i.e., Georgia-Pacific II — would likely be accorded preclusive effect. See, e.g., Fresenius USA, Inc. v. Baxter Int’l, Inc., Ill F.3d 1330, 1347 n. 14 (Fed.Cir.2013) (noting that where final judgments conflict, “the settled rule is that the later judgment, not the earlier, has preclu-sive force going forward”).

.Contrary to the majority’s concern, the "conflict” between the various judgments is not necessarily unseemly. As the Supreme Court has explained: "Although the application of a federal statute such as the Lanham Act by judges and juries in courts throughout the country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy to ensure fair competition.” POM Wonderful, LLC v. Coca-Cola Co., -U.S.-, 134 S.Ct. 2228, 2239, 189 L.Ed.2d 141 (2014).